IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

|  |  |
|---|---|
| ANDRÉ DACRES,<br><br>    Petitioner,<br><br>v.<br><br>LAKAE T. McGOWAN<br><br>    Respondent. | Civil Action: 2:22-cv-183 |

### [PROPOSED] FINDINGS OF FACT & CONCLUSIONS OF LAW

Petitioner, André Dacres (the "Father"), by and through his undersigned counsel, files this Proposed Findings of Fact & Conclusions of Law, and states as follows:

**I. Procedural History**

1. This case is before the Court on the Father's Verified Petition for Return of Child to Jamaica (the "Petition"). The Father filed his Petition on October 11, 2022 against the Respondent, Lakae T. McGowan (the "Mother"). (Doc. No. 1). The Father seeks the return of the parties' daughter, DKD, born in 2019, to Jamaica. *Id*.

2. This Court issued the Writ of Summons in this matter on October 11, 2022. (Doc. No. 2-2). The Father served the Mother by private process on October 14, 2022. (Doc. No. 2-1).

3. The Mother's responsive pleading was therefore due on or before Friday, November 4, 2022. The Mother did not file any responsive pleading.

4. On November 14, 2022, the Father filed his Motion to Expedite & For Issuance of Show Cause Order Pursuant to Hague Convention. (Doc. No. 4). The Court granted the Father's motion and entered a Show Cause Order scheduling an expedited scheduling conference for

1

December 9, 2022, and ordering the Father to serve the Show Cause Order on the Mother by private process on or before December 2, 2022. (Doc. No. 5).

5. The Father served the Mother as ordered on November 15, 2022 with the Show Cause Order, all other pleadings and papers, and the Court's Zoom login instructions for the expedited scheduling conference. (Doc. No. 7-1).

6. The expedited scheduling conference was held by Zoom on December 9, 2022. The Father and his counsel appeared. The Mother failed to appear. This Court finds that the Mother has been served with both the initial process and the Show Cause Order, and that she has failed to appear as ordered.

7. In accordance with the Hague Convention[1] and ICARA,[2] and based upon the Father's sworn averments and the record herein, this Court has considered the uncontroverted averments set forth in the Father's Petition, and makes the following Findings of Fact and Conclusions of Law.

## II. Findings of Fact

8. The Mother and Father are citizens of Jamaica, and have lived in Jamaica for their entire lives, until the Mother removed the child to Vermont from Jamaica on or about February 4, 2022.

9. The parties met and began their relationship in Jamaica in 2004. They moved in together as a family in 2018 when they learned that the Mother was pregnant with the child.

---

[1] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986).
[2] 22 U.S.C. 9001 *et seq.*

2

10. The Mother's mother, Elaine Johnson Barber (the "Maternal Grandmother"), lives in Vermont. The Mother and Father agreed for the child to be born in Vermont, and thereafter to live with the parties in Jamaica.

11. In or about October 2018, the Mother travelled to Vermont for the child's birth.

12. The Father was not able to travel with the Mother to the United States because he needed to continue to work in Jamaica to support the family. The Father does not have, and did not have at the time of the child's birth, immigration status that would have allowed him to live or work in the United States.

13. The child was born in Vermont in January 2019.

14. The Mother and child returned home to Jamaica in February 2019.

15. After the child's birth and return home to Jamaica, the Mother, Father, and child continued to live together as a family in Jamaica.

16. The Mother and Father were both fully involved in the child's day-to-day family and cultural life, and in providing for the child's needs in Jamaica when they lived together as a family. The Father has always been the sole or primary income earner for the family and he has always provided for all of the child's financial needs.

17. The Mother and Father separated in June 2021. After their separation, the parties each continued to live in Jamaica. The Mother and Father agreed to co-parent the child after their separation. The child spent overnight time with each party at their respective homes in Jamaica each week on a set schedule that the parties agreed for the child. The parties operated their agreed-upon co-parenting schedule for the child from the time of their separation in June 2021, until the Mother removed the child from Jamaica in February 2022.

18. The Mother and Father were both fully involved in the child's day-to-day family and cultural life, and in providing for the child's needs in Jamaica both before and after their separation.

19. Before the Mother removed the child from Jamaica, the child received medical care in Jamaica and attended private school in Jamaica. The child has participated in sports, music, and other cultural activities in Jamaica. The Mother and Father were both fully involved in all such activities with the child.

20. Before the Mother removed the child from Jamaica, the child was fully involved and immersed in day-to-day family life and cultural life in Jamaica. The child has extended family—grandparents, aunts and uncles, and cousins— in Jamaica, and has always regularly spent time with her extended family in Jamaica.

21. The Mother and Father have never agreed together for the child to live anywhere other than Jamaica. On Friday, February 4, 2022, the Father dropped the child off at school in Jamaica the morning. Under the parties' agreed-upon co-parenting schedule, the Mother was to pick the child up from school that day, and the child was to be with the Mother until school drop off in the morning on the following Tuesday, February 8, 2022.

22. On February 7, 2022, the Father received an email from the Mother, in which the Mother told the Father for the first time that she was leaving with the child for the United States. The Father later learned from the child's teacher that the child had not attended school on Monday, February 7, 2022.

23. The Father tried to contact the Mother by telephone and email. The Mother has not responded to most of the Father's attempts to contact her.

24. Shortly after the Mother removed the child to the United States, she responded to one of the Father's WhatsApp messages. The Mother told the Father that she was visiting Branford, Florida with the child and would return to Jamaica with the child on or about May 25, 2022. The Mother did not return to Jamaica with the child.

25. On April 1, 2022, the Father submitted his Hague Convention Application for Return to the Central Authority for Jamaica, seeking the return of the child to Jamaica.

26. The United States Central Authority, under article 7(a) of the Convention, advised the Father's counsel that the Mother and child are located at: 187 Brooklyn Street, Apt. 1, Morrisville, Vermont 05661.

27. The Father therefore filed his Petition in this Court.

### III.     Conclusions of Law

28. The Hague Convention applies to cases in which a child under the age of 16 years has been removed or retained from his or her habitual residence in breach of rights of custody of a petitioner, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child.

29. The child is under the age of 16.

30. The child's habitual residence is Jamaica, and was Jamaica on the date the Mother removed the child from Jamaica on or about February 4, 2022 in accordance with our totality of the circumstances test. *Monasky v. Taglieri*, 140 S. Ct. 719, 723 (2020).

31. From the totality of the circumstances perspective as of the date of removal on or about February 4, 2022, Jamaica is the child's home. Jamaica has always been the child's ordinary home and holds a degree of settled purpose from the child's perspective. The child is fully involved and integrated in all aspects of daily and cultural life in Jamaica. The child has extended family

and friends in Jamaica. The child receives routine medical care in Jamaica. The child attends school in Jamaica. The child participates in cultural activities in Jamaica.

32. At the time the Mother removed the child from Jamaica, the Father had (and continues to have) rights of custody to the child under Jamaican law by operation of law under the Jamaican Child Care & Protection Act (CCPA) 2004 and the Jamaican Children (Guardianship and Custody) Amendment Act 2017. (Doc. No. 9).

33. There is no court order issued by any court in Jamaica or anywhere else in the world relating to the child at issue in this case. The parties, as the parents of the child, have joint custody of the child under Section 2(4)(a) of the CCPA. Under the Jamaican Children (Guardianship and Custody) Amendment Act 2017, custody rights are defined to include the right to determine the child's place of residence.

34. Joint parental rights are 'rights of custody' under Article 5*a* of the Hague Convention. *Bader v. Kramer*, 484 F.3d 666, 670 (4th Cir. 2007).

35. The Father has these rights by operation of law without any orders having been entered relating to the children by any Jamaican court, and he had these rights at the time the Mother removed the child from Jamaica.

36. At the time the Mother removed the child from Jamaica, the Father was exercising his rights of custody within the meaning of Articles 3 and 5*a* of the Convention, or would have been so exercising his rights but for the removal, by caring for the child, fully participating in the child's life, and undertaking all parental rights since the child was born, and would have been so exercising his rights of custody but for the removal. Convention, art. 3.

37. The Mother's removal of the child from Jamaica is therefore wrongful under the Hague Convention because the Mother has removed the child from her habitual residence of

6

Jamaica, in breach of the Father's rights of custody to the child under Jamaican law, which the Father was exercising at the time of the removal.

38. The Father has met his prima facie burden under the Convention. The Mother has not appeared in this case and has not asserted any of the Convention's defenses. The Father's Petition is hereby granted. A separate Return Order will be entered.

/s/ Stephen J. Cullen
Stephen J. Cullen
Kelly A. Powers
Miles & Stockbridge P.C.
1201 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20004
(202) 465-8374
(410) 385-3709 (fax)
scullen@milesstockbridge.com
kpowers@milesstockbridge.com

*Attorneys for Petitioner, André Dacres*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of December, 2022, a copy of the foregoing Proposed Findings of Fact and Conclusions of Law was electronically filed, and that it is available for viewing and downloading from the ECF system and that a copy was sent via first class mail, postage prepaid, to:

Lakae T. McGowan
187 Brooklyn Street, Apt. 1
Morrisville, Vermont 05661

*Respondent*

/s/ Stephen J. Cullen
Stephen J. Cullen

7